UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABRAHAM G. PINZON,<br><br>  Plaintiff,<br><br>  v.<br><br>MENDOCINO COUNTY SHERIFF'S OFFICE, et al.,<br><br>  Defendants. | Case No. 23-cv-01571-AMO<br><br>**ORDER OF DISMISSAL WITH LEAVE TO AMEND**<br><br>Re: Dkt. Nos. 1, 5, 7 |

## I.   INTRODUCTION

Plaintiff Abraham G. Pinzon filed a *pro se* civil rights action in which he alleged violations of his rights under Section 504 of the Rehabilitation Act and Title VI of the Civil Rights Act of 1964, as well as additional causes of action that arise under 42 U.S.C. § 1983. ECF No. 1 ("Compl."). Venue is proper because the events giving rise to the claim are alleged to have occurred in Mendocino County, which is located in this judicial district. *See* 28 U.S.C. § 1391(b). Pinzon names the following defendants: Mendocino County Sherriff's Office and the California Highway Patrol ("Defendants"). Pinzon also seeks appointment of counsel. ECF No. 5. The Court now reviews the sufficiency of Pinzon's complaint to determine whether it satisfies 28 U.S.C. § 1915(e)(2)(B). Because the complaint does not state any cognizable claims, the complaint is **DISMISSED** with leave to file an amended complaint no later than **60 days** from the date of this Order.

## II.   ALLEGATIONS OF THE COMPLAINT

Pinzon brings this action against Defendants in connection with his arrest on an unspecified date. Pinzon alleges that Defendants violated various of his constitutional rights, asserting the following claims: 1) Defendants discriminated against him due to his race or

1 disability under Section 504 of the Rehabilitation Act and Title VI of the Civil Rights Act of 1964,
2 Compl. at 6; 2) Defendants "falsif[ied] an arrest warrant" and maliciously prosecuted Pinzon, *id.*
3 at 8; 3) Defendants used excessive force in arresting Pinzon, pushing him to the ground and
4 causing an abrasion, *id.* at 7; and 4) Defendants placed Pinzon in a different jail cell because of his
5 race, *id.* Pinzon alleges that Defendants' actions caused him to suffer $365,000 in emotional and
6 financial damages. *Id.* at 9.

## III. DISCUSSION

### A. STANDARD OF REVIEW

Where a plaintiff is found to be indigent under 28 U.S.C. § 1915(a)(1), a federal court must conduct a preliminary screening and dismiss any claims which: (1) are frivolous or malicious; (2) fail to state a claim upon which relief may be granted; or (3) seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (citations omitted). While detailed factual allegations are not required, a plaintiff must provide more than a "formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). A complaint must proffer "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. To state a claim that is plausible on its face, a plaintiff must allege facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions [and] . . . mere conclusory statements. *Id.* (citing *Twombly*, 550 U.S. at 555). Courts "do not necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1071 (9th Cir. 2009).

Where the complaint has been filed by a pro se plaintiff, courts must "construe the

2

pleadings liberally . . . to afford the petitioner the benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). "A pro se litigant must be given leave to amend his or her complaint unless it is absolutely clear that the deficiencies in the complaint could not be cured by amendment." *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987), superseded on other grounds by statute, as recognized in *Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) (en banc). Further, when it dismisses the complaint of a pro se litigant with leave to amend, "the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (quoting *Ferdik v. Bonzelet*, 963 F.2d 1258, 1261 (9th Cir. 1992)).

### B.   ANALYSIS

#### 1.   Rehabilitation Act and Civil Rights Act Claims

Pinzon alleges that California state police officers discriminated against him due to his disability status, in violation of Section 504 of the Rehabilitation Act, and his race, in violation of Title VI of the Civil Rights Act of 1964. Compl. at 6.

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity **receiving Federal financial assistance**." 29 U.S.C. § 794 (emphasis added). To prevail on a Section 504 claim, a plaintiff must establish "(1) he is an individual with a disability; (2) he is otherwise qualified to receive [a certain] benefit; (3) he was denied the benefits of [a certain program] solely by reason of his disability; and (4) the program receives federal financial assistance." *Updike v. Multnomah County*, 870 F.3d 939, 949 (9th Cir. 2017) (citing *Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001)).[1]

Title VI of the Civil Rights of 1964 provides that "[n]o person in the United States shall,

---

[1] Title II of the ADA offers additional protections. To allege a Title II claim, a plaintiff must show (1) he is a qualified individual with a disability; (2) he was discriminated against by the public entity; and (3) the discrimination was due to his disability. *Updike*, 870 F.3d at 949. Title II protections extend to state and county jails. *Id.* Pinzon fails to assert a prima facie Title II violation, as he does not allege how he was discriminated by a public entity or that such discrimination was due to his disability.

1  on the ground of race, color, or national origin, be excluded from participation in, be denied the
2  benefits of, or be subjected to discrimination under any program or activity **receiving Federal**
3  **financial assistance**." 42 U.S.C. § 2000d (emphasis added); *see Yu v. Idaho State Univ.*, 15 F.4th
4  1236, 1242 (9th Cir. 2021). Additionally, to succeed on a Title VI claim, a plaintiff must prove
5  intentional discrimination. *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001); *Yu*, 15 F.4th at
6  1242.

7  Pinzon fails to provide more than conclusory allegations of discrimination without factual
8  support. For example, Pinzon alleges that Officer Martin (who is not a named defendant) engaged
9  in "[i]ntimidating acts" and spoke to him using a "hostile tone." Compl. at 6. However, Pinzon
10 must allege more than mere hostility, and clarify how Defendants treated him differently because
11 of his race or disability. *See Yu*, 15 F.4th at 1242; *Updike*, 870 F.3d at 949. Further, Pinzon fails
12 to allege that the entities alleged to have discriminated against him—the California Highway
13 Patrol and the Mendocino Sherriff's Office—receive federal funds, as required by both statutes.
14 *See* 29 U.S.C. § 794; 42 U.S.C. § 2000d. Thus, Pinzon has failed to set forth sufficient allegations
15 to state a claim, and his claims are **DISMISSED** with leave to amend to provide the
16 aforementioned information, if possible.

17                             **2.     Section 1983 Claims**

18 To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) that a right secured by
19 the Constitution or laws of the United States was violated, and (2) that the alleged violation was
20 committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).
21 Liability may be imposed on an individual defendant under section 1983 if the plaintiff can show
22 that the individual defendant proximately caused the deprivation of a federally protected
23 right. *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988). "A person deprives another of a
24 constitutional right within the meaning of section 1983 if he does an affirmative act, participates in
25 another's affirmative acts, or omits to perform an act which he is legally required to do, that
26 causes the deprivation of which the plaintiff complains." *Id.* at 633 (citations omitted).
27 ///
28 ///

Here, Pinzon does not name individual defendants, but instead names as defendants the Mendocino County Sheriff's Office and California Highway Patrol. Compl. at 1-2.[2] For a government entity to be liable under Section 1983, the constitutional violations must directly stem from a policy, custom, or practice adopted by the government entity. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690–91 (1978); *see Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) ("A government entity may not be held liable under 42 U.S.C. § 1983, unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights.").

To establish a governmental entity's liability under *Monell*, a plaintiff must demonstrate: (1) that the plaintiff was deprived of a constitutional right; (2) the governmental entity had a policy; (3) the policy amounted to "deliberate indifference" of the plaintiff's constitutional right; and (4) the policy is the "moving force" behind the constitutional violation. *Dougherty*, 654 F.3d at 900. The failure to train may constitute "deliberate indifference" if "the need to train was obvious and the failure to do so made a violation of constitutional rights likely." *Dougherty*, 654 F.3d at 900 (citing *City of Canton v. Harris*, 489 U.S. 378, 390) (1989)). For each of the claims detailed below, Pinzon fails to allege that the constitutional violations he suffered were due to the California Highway Patrol's or the Sheriff's Office's "deliberate policy, custom, or practice." *See Galen v. Cnty. of L.A.*, 477 F.3d 652, 667 (9th Cir. 2007).

### a. Malicious Prosecution Under the Fourth Amendment

To establish a Section 1983 malicious prosecution claim, a plaintiff must prove that defendants: "(1) prosecuted [them] (2) with malice; (3) without probable cause; and (4) with 'the purpose of denying [them] equal protection or another constitutional right.'" *Heard v. Jackson*,

---

[2] Should Pinzon choose to name individual officers as defendants in an amended complaint, he must address whether the officers have qualified immunity against the claims. "When an individual sues a government official for violation of a constitutional right, the official is entitled to qualified immunity unless (1) the facts alleged, viewed in the light most favorable to the individual asserting the injury, show that the official violated a constitutional right, and (2) the contours of the right were sufficiently clear so that a reasonable official would understand that his conduct violated that right." *Whitaker v. Garcetti*, 486 F.3d 572, 581 (9th Cir. 2007). A government official's personal liability turns on the "objective legal reasonableness" of the action taken. *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citation omitted).

No. 21-CV-09472-JSC, 2022 WL 2356821, at *4 (N.D. Cal. June 30, 2022) (quoting *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 919 (9th Cir. 2012)). A plaintiff alleging a Fourth Amendment violation must also show that "the criminal prosecution ended without a conviction." *Thompson v. Clark*, 142 S. Ct. 1332, 1341 (2022).

Pinzon alleges that the Mendocino County Sherriff's Office "falsif[ied] an arrest warrant" that had "no support from the State judge." Compl. at 8. "Ordinarily, the decision to file a criminal complaint is presumed to result from an independent determination on the part of the prosecutor, and thus, precludes liability for those who participated in the investigation or filed a report that resulted in the initiation of proceedings." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1067 (9th Cir. 2004) (citation omitted). However, Section 1983 claims are permitted against state or local officials who "improperly exerted pressure on the prosecutor, knowingly provided misinformation to him, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings." *Id.*

Pinzon fails to allege the required elements of malicious prosecution: that Defendants prosecuted him with malice, without probable cause, with the purpose of denying him equal protection or another right, and that the prosecution ended favorably to Pinzon. Therefore, Pinzon's claim is **DISMISSED** with leave to amend to allege the elements of a malicious prosecution claim.

### b.  Excessive Force Under the Fourth Amendment

Claims of excessive force in making an arrest or seizure are properly analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). This analysis looks to "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396; *see also Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985) ("the question [is] whether the totality of the circumstances justified a particular sort of search or seizure").

Pinzon alleges that Officers Comer and Van Woerner "pushed [him] down to [his] face" in his driveway causing an "abrasion." Compl. at 7. He further alleges that the officers fabricated

6

the arrest warrant, writing that Pinzon "threw himself down to the ground." *Id.* However, Pinzon has not named those officers as defendants, nor has he alleged that they are not entitled to qualified immunity. Additionally, Pinzon has not averred that the officers were following a deliberate policy, custom, or practice. Accordingly, Pinzon's claim is **DISMISSED** with leave to amend.

### c. Equal Protection Claim for Racial Segregation

Under the Equal Protection Clause of the Fourteenth Amendment, "no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). The "central mandate" of the Equal Protection clause is "racial neutrality in governmental decisionmaking." *Miller v. Johnson*, 515 U.S. 900, 904 (1995). Typically, racial classifications by the government are reviewed under a strict scrutiny analysis. *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 720, (2007). And while the Fourteenth Amendment protections extend to state jails, "[i]n the prison context … even fundamental rights such as the right to equal protection are judged by a standard of reasonableness." *Walker v. Gomez*, 370 F.3d 969, 974 (9th Cir. 2004) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)). Specifically, courts examine whether a prison official's actions are "reasonably related to legitimate penological interests." *Id.*

Pinzon alleges that the "[j]ailer suggested he was putting me in [a] cell (free of any other inmates) stating racial concerns." Compl. at 7. He further alleges that the prosecutor stated that "[this type of] arrangement … apparently is reserved for hostile incarcerants [sic]." *Id.* Pinzon fails to allege that similarly situated individuals were treated differently or that the actions were not reasonably related to a legitimate penological interest. *See Walker*, 370 F.3d at 974; *Cleburne*, 473 U.S at 439. Moreover, he does not name as a defendant the individual or entity responsible for placing him in a cell without other inmates. Accordingly, Pinzon's claim is **DISMISSED** with leave to amend.

**IV.    MOTION FOR APPOINTMENT OF COUNSEL**

Pinzon also seeks appointment of counsel under the Crime Victims' Rights Act, 18 U.S.C. § 3771(c)(2), and under the Victims' Rights and Restitution Act, 34 U.S.C. § 20141. ECF No. 5. Neither statute grants this Court the authority to appoint counsel. However, in proceedings *in forma pauperis*, a district court "may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1).

The decision to request counsel to represent an indigent litigant under 28 U.S.C. § 1915 is within "the sound discretion of the trial court and is granted only in exceptional circumstances." *Franklin v. Murphy*, 745 F.2d 1221, 1236 (9th Cir. 1984). In determining whether "exceptional circumstances" exist, the Court must evaluate the likelihood of the plaintiff's success on the merits and the plaintiff's ability to articulate his claims "in light of the complexity of issues involved." *Agyeman v. Corr. Corp. of Am.*, 390 F.3d 1101, 1103 (9th Cir. 2004) (quoting *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986)).

There is no doubt that not having a lawyer puts a party at a disadvantage in our adversarial system of justice. However, the Court is compelled to follow controlling precedent and determine if "exceptional circumstances" exist to appoint counsel. Pinzon failed to provide any reasons as to why he requires counsel, and thus has not demonstrated exceptional circumstances. Accordingly, Plaintiff's motion for the appointment of counsel is **DENIED**. The Court will reconsider the necessity of appointing counsel if circumstances warrant such action at a later date.

**CONCLUSION**

For the foregoing reasons, the Court orders as follows:

1. Plaintiff's complaint is **DISMISSED** with leave to amend.
2. Plaintiff's motion for appointment of counsel is **DENIED**.
3. If Plaintiff wishes to pursue this action, Plaintiff must file an amended complaint no later than **60 days** from the date of this Order.
4. If Plaintiff fails to amend, the case will be dismissed under Rule 41(b) for failure to prosecute. *See Toyota Landscape Co., Inc. v. Building Material & Dump Truck Drivers Local 420*, 726 F.2d 525, 528 (9th Cir. 1984).

8

The Court advises Plaintiff that a Handbook for Pro Se Litigants, which contains helpful information about proceeding without an attorney, is available through the Court's website, http://cand.uscourts.gov/pro-se.

The Court also advises Plaintiff that additional assistance may be available by making an appointment with the Legal Help Center. There is no fee for this service. To make an appointment with the Legal Help Center in San Francisco, Plaintiff may email fedpro@sfbar.org or call 415-782-8982. The Help Center's website is available at https://cand.uscourts.gov/about/court-programs/legal-help-desks/. Lawyers at the Legal Help Center can provide basic assistance to parties representing themselves but cannot provide legal representation.

**IT IS SO ORDERED.**

Dated: June 23, 2023

**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**